Filed 11/5/14  In re J.J. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re J.J., a Person Coming Under the Juvenile Court Law. | |
| SAN FRANCISCO HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>S.M.,<br><br>        Defendant and Appellant. | A139897<br><br>(San Francisco City & County Super. Ct. No. JD133164) |

S.M. (mother) appeals from jurisdiction and disposition orders pursuant to which the juvenile court sustained dependency jurisdiction, adjudicated the minor, J.J., a dependent of the court, removed the minor from mother's custody, and ordered reunification services and monitored visitation.  Counsel filed a "no issues statement" in accordance with *In re Sade C.* (1996) 13 Cal.4th 952 (*Sadie C.*) and *In re Phoenix H.* (2009) 47 Cal.4th 835 (*Phoenix H.*).[1]  Counsel served mother with a copy and advised her

---

[1]  In *Phoenix H.*, the Supreme Court reiterated that counsel's filing of a "no issues statement" in an appeal in a juvenile dependency proceeding does not trigger independent review by the appellate court.  (*Phoenix H., supra,* 47 Cal.4th at pp. 841–842.)  Rather, once counsel reviews the record on appeal and files such a statement, the appellate court may rely on it, and may properly dismiss the appeal.  (*Id.* at p. 842 ["we held [in *Sade C., supra*, 13 Cal.4th at page 994] that the Court of Appeal could dismiss an indigent parent's appeal if appointed counsel filed a brief raising no arguable issues"].)

1

she could file a letter with this court suggesting errors for review. Mother has filed a "Statement" which we have reviewed. (*Phoenix H., supra*, 47 Cal.4th at p. 844 [appellate court "has discretion to permit the parent to personally file a brief" and is required to do so "only upon a showing of good cause that an arguable issue does, in fact, exist"].)

Mother contends the dependency proceeding is the result of false accusations and statements by a woman who was a competing vendor selling hotdogs, and by her sister-in-law who allegedly can no longer bear children and wanted to take away her daughter. Mother claims she did not know until the contested jurisdictional and dispositional hearing about the "past" of the man accused of molesting her daughter, Henry Trejos, who she states was her employer and who has had a sustained finding of sexual abuse in another matter. Mother maintains she is devoted to and can protect her daughter, who is nine years old.

"On appeal, the 'substantial evidence' test is the appropriate standard of review for both the jurisdictional and dispositional findings." (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.) We must uphold the jurisdictional findings if, "after reviewing the entire record and resolving all conflicts in favor of the respondent and drawing all reasonable inferences in support of the judgment, we determine there is substantial evidence to support the findings." (*In re Monique T.* (1992) 2 Cal.App.4th 1372, 1378.) We resolve all conflicts in support of the determination, examine the record in a light most favorable to the dependency court's findings and conclusions, and indulge all legitimate inferences to uphold the court's order. (*In re Brison C.* (2000) 81 Cal.App.4th 1373, 1379; *In re Tania S.* (1992) 5 Cal.App.4th 728, 733–734.)

We have reviewed the record, paying particular attention to the reports prepared for and the reporter's transcript of the contested hearing. The child protective worker (CPW) testified the department received a report of suspected sexual abuse, and she found J.J. in a van with the windows covered. J.J. did not tell the CPW she had been sexually abused, but avoided contact whenever the CPW raised the issue. The CPW did learn J.J. had been told she had to urinate into a bucket in the van because mother and Trejos were busy selling hotdogs at the location.

2

The court dependency worker (CDW) also testified. She was familiar with Trejos from a prior case involving sexual abuse. J.J. was timid in speaking with the CDW and nervous when Trejos' named was mentioned. J.J. told the CDW she did not feel safe at her mother's house, and the CDW did not recommend return of J.J. to mother because mother denied Trejos presented any risk to her daughter.

Maria A., J.J.'s aunt, testified she was concerned about J.J.'s well being because she had heard (although not actually seen) that J.J., mother and Trejos slept in the same bed, with J.J. in the middle. Cecilia A., J.J.'s godmother, was concerned because she saw J.J. in the van with Trejos, while mother was outside selling hotdogs. She had once observed Trejos touch J.J.'s breast area. She was also concerned because Trejos talked about mother not having sex with him, despite children being nearby at the time of this conversation. She told mother of her concerns, but mother said J.J. had grown close to Trejos because he bought her things.

Gloria Samayoa, the multidisciplinary interview coordinator, testified about her interview with J.J. Mother was extremely reluctant to allow J.J. to be interviewed. Once the interview began, J.J. seemed to relax somewhat and talked about her school and background information. But when Samayoa asked about Trejos, J.J. became much less communicative. Although J.J. did not acknowledge any sexual abuse, Samayoa felt she should be interviewed again. Samayoa was also involved in the prior case involving Trejos.

Although mother was present at the hearing , she did not testify. Nor did she call any witnesses.

The reports prepared for the hearing stated mother did not believe J.J. had been molested or there was any risk she would be, because mother was "always" with the child. She did not believe anything could be going on inside the van because she would have "heard" something. She admittedly allowed J.J. to be with Trejos after being warned about his history and promising she would keep J.J. away from him. Her explanation was she happened to meet Trejos while taking J.J. to school and they accepted a ride. The reports also noted mother's contention the dependency proceeding

3

was the result of a false report by a fellow hot dog vendor who wanted to take over mother's street corner. The reports additionally provided information about an interview with J.J., where she stated she did not feel safe at mother's house, but did feel safe in her placement. When asked whether in a "house of dreams" Trejos would be present, J.J. said "no," "shut down," and became "visibly uncomfortable." The reports also discussed an incident when J.J.'s maternal aunt watched J.J. over a weekend, and Trejos called, sounding "angry" and "frantic" that J.J. had been left in her care. The CPW was "extremely concerned" about mother's ability to protect J.J. Mother "clearly did not understand" the danger posed by Trejos and admitted she had lied to another protective services worker about keeping J.J. away from Trejos and she had contacted Trejos so she could keep her job. Mother also admitted she lied about her address.

The juvenile court based jurisdiction on: (a) failure to protect J.J. (§ 300, subd. (b)), finding among other things mother provided a false address and coached J.J. in an attempt to cover up the actual situation; (b) failure to prevent sexual abuse (§ 300, subd. (d)), finding among other things mother failed to protect against the probability of sexual abuse by her boyfriend, and allowed the boyfriend access to J.J. after being informed of the boyfriend's prior sexual abuse of other children and after promising to keep J.J. away from him; and (c) no provision for support (§ 300, subd. (g)). The court also found removal from mother was appropriate because there was a substantial danger to J.J.'s physical well-being and there was no reasonable means to protect her without removing her from her parent's custody.

As we have recited above, there is evidence in the record supporting the dependency court's jurisdictional and dispositional findings. While mother's view of the situation is different, we cannot reweigh the evidence on appeal. It is the province of the dependency court to determine which witnesses are most credible and to decide what evidence is most persuasive.

## DISPOSITION

The jurisdiction and disposition orders are affirmed.

4

_____
Banke, J.

We concur:


_____
Humes, P. J.


_____
Margulies, J.

5